UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FC ONLINE MARKETING, INC.,

    Plaintiff,

vs.                                                 Case No. 8:13-cv-01713-T-27TBM

TARA COSTA et al.,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** are Plaintiff's Motion for Partial Summary Judgment and in the Alternative, Motion in Limine (Dkt. 57), Defendants' Motion for Final Summary Judgment (Dkt. 59), and Plaintiff's Motion for Summary Judgment on Defendants' Counterclaims (Dkt. 61). Upon consideration, Plaintiff's Motion for Partial Summary Judgment (Dkt. 57) is DENIED, Defendants' Motion for Final Summary Judgment (Dkt. 59) is GRANTED as to Count III and otherwise DENIED, and Plaintiff's Motion for Summary Judgment on Defendants' Counterclaims (Dkt. 61) is DENIED.

I.     INTRODUCTION

Defendant Tara Costa[1] became well known for her appearance on the 2009 edition of *The Biggest Loser*, a reality television show featuring a competition among contestants to lose the most weight. On January 1, 2011, Costa purportedly entered into an agreement with the Inspire Change

---

[1] As discussed below, after the completion of briefing on all the pending summary judgment motions, the parties jointly dismissed Costa from the case to create diversity jurisdiction.

1

Foundation, a member entity of Defendant The Champions Fund, Inc. ("TCF"),[2] granting Inspire Change the authority to license her name and image for commercial purposes. All parties agree that no copy of the executed contract has been found or produced. (*See* Dkt. 59-2 ¶ 2). Nevertheless, Costa avers that she and Inspire Change executed the blank "License Agreement" submitted in support of summary judgment. (*See* Dkt. 59-1). Subsequently, in June or July of 2013,[3] Costa and Liz Willyoung (on behalf of TCF) executed the "Confirmation of License Agreement," which memorialized Costa's original execution of the License Agreement and ratified its terms. (Dkt. 59-3; Dkt. 57-3 at 147:7-12).

On March 1, 2011, Plaintiff FC Online Marketing ("FCOM") and TCF executed what the parties refer to as the "Foundation Contract." (Dkt. 59-4). The Foundation Contract granted to FCOM a limited right to use Costa's name, image, and likeness on television, radio, Internet, and social media platforms, with written permission from Costa. (Dkt. 59-4 at 2). The term of the Foundation Contract was 12 months, with an automatic renewal for an additional 12 months unless cancelled by either party. (Dkt. 59-4 at 3). When the Foundation Contract automatically renewed, the fees owed to Costa increased by 20%. (Dkt. 59-4 at 3).[4]

The Foundation Contract imposed several contractual obligations on Costa. She was required

---

[2]Inspire Change and The Champions Fund are the same entity for the purposes of this Order. (Dkt. 57-3 at 149:16-19).

[3]This case was filed on July 2, 2013. (Dkt. 1).

[4]The full "term" provision of the contract reads:

> The term of the agreement is twelve (12) months ("Initial Term") effective upon execution of this Agreement. This Agreement will automatically renew for an additional year ("Renewal Term") unless cancelled by either Party as stipulated herein. Both Parties will have the option to not renew with written notification to the other Party no less than ninety(90) days prior to the conclusion of the initial term. If automatically renewed, the fees in this Agreement will be increased by twenty (20%) percent for the renewal term. Payment terms as defined below will remain the same for the Renewal Term.

(Dkt. 59-4 at 3).

2

(1) to participate in two full-day promotional shoots; (2) participate in two conference calls per month with "clients" and one conference call per month with "store owners"[5]; (3) be active on social media by delivering four monthly social media messages through Facebook or Twitter, as well as two additional posts on FCOM's Facebook page[6]; (4) make six in-person appearances; and (5) participate in phone interviews set up by FCOM on mutually agreed upon dates.[7] The Foundation Contract also contains a "Talent Responsibility" provision, under which Costa agreed "to maintain

---

[5]The "conference calls" provision of the contract reads:

**CONFERENCE CALLS**
Two (2) Conference Calls per month with clients
- Dates: TBD and mutually agreed to no less than fifteen (15) business days in advance.
- Duration: Each call will last no longer than one (1) hour.
- Line/Moderator: [FCOM] shall provide the conference call numbers, system and moderator.

One (1) Conference Call per month with store owners
- Dates: TBD and mutually agreed to no less than fifteen (15) business days in advance
- Duration: Each call will last no longer than forty five (45) minutes
- Line/Moderator: [FCOM] shall provide the conference call numbers, system and moderator.

(Dkt. 59-4 at 3).

[6]The "social media" provision of the contract reads:

[Costa] will deliver a minimum of four (4) monthly social media messages through either Facebook or Twitter. The content of the messages can be worked on with [FCOM] and be mutually agreed upon promotional messaging. [Costa] and [FCOM] will also coordinate two (2) additional posts per month on [FCOM's] Facebook page directly by [Costa].

(Dkt. 59-4 at 3).

[7]The "public relations" provision of the contract reads:

[Costa] will make six (6) in-person PR appearances at no additional charge during each term of this Agreement. [FCOM] will cover all transportation and accommodations, if required, associates with these appearances. For additional appearances, [Costa] will be compensated at a day rate of $1250 per day. [Costa] also agrees to participate in phone interviews set up by [FCOM] or [FCOM's] designated public relations representatives as long as it is scheduled in advance and the day and time for scheduling are mutually agreed upon.

(Dkt. 59-4 at 3).

3

her current level of fitness and conditioning during the term of this Agreement." (Dkt. 59-4 at 3).[8]

Also on March 1, 2011, FCOM and Costa entered into a contract that the parties refer to as the "Costa Contract." (Dkt. 59-5). In the Costa Contract, FCOM guaranteed that Costa would make a minimum of 15 in-store promotional appearances, for which Costa would be paid $2,500.00 per appearance.[9] Like the Foundation Contract, the Costa Contract was for a term of 12 months, with an automatic renewal for another 12 months, unless cancelled by either party. (Dkt. 59-5 at 2). If renewed, the fees in the Costa Contract were to increase by 10%. The Costa Contract also included a "talent responsibility" provision identical to the one in the Foundation Contract, requiring Costa to "maintain her current level of fitness and conditioning during the term of this Agreement." (Dkt. 59-5 at 3).

After the parties entered into the two contracts, Costa appeared for a photo shoot for FCOM.

---

[8]The "talent responsibility" provision reads:

> [Costa] agrees to use best efforts to represent themselves and [FCOM] in a positive manner at all times during the term of this Agreement including public appearances, in the media, on the internet including social media websites such as Facebook and Twitter, and in the course of day to day activities. Additionally, given the specific nature of [FCOM's] business and the services to be provided by [Costa], [Costa] *agrees to maintain her current level of fitness and conditioning during the term of this Agreement.*

(Dkt. 59-4 at 3 (emphasis added)).

[9]The "appearances" provision of the Costa Contract reads:

> **APPEARANCES**:
> [Costa] will make and [FCOM] guarantees a minimum of fifteen (15) promotional in-store personal appearances... for [FCOM] during the term of this Agreement. These appearances will be scheduled no less than twenty (20) business days in advance to avoid any scheduling concerns. Each appearance shall last a maximum of four (4) hours. First Class transportation and accommodations (if necessary) to be paid for by [FCOM]. [FCOM] will also provide a per diem at a rate equivalent to that set by the FSA for days traveling/working for ILKB
> . . . .
>
> [FCOM agrees to pay [Costa] $2,500.00 per appearance. The structure and content of appearances will be mutually agreed upon in advance and any promotional materials required for the appearance are the responsibility of [FCOM].
>
> For any additional personal appearance(s) not covered within this Agreement, [Costa] will be compensated by [FCOM] at a rate of $2,500.00 per appearance.

(Dkt. 59-5 at 2).

(Dkt. 62-6 ¶ 10). FCOM hired Fleur-de-lees Photography to take the pictures, which the parties refer to generically as "the Photos." (*See* Dkt. 62-11 at 4-6). The "Model Release" provision of that contract specified that "FC Online Marketing, Inc. owns all right, title and interest in the photos to be taken as part of this shoot." (Dkt. 62-11 at 4).[10] The pictures taken at this photo shoot were posted to FCOM's websites, and there is no dispute that they remained on the websites after the two-year contract terms expired. (*See* Dkt. 62 at 6).

On April 16, 2013, counsel for Costa sent FCOM a demand letter alleging that FCOM was using Costa's name and likeness without her permission in breach of the Foundation Contract and that FCOM had failed to compensate Costa for the personal appearances guaranteed in the Costa Contract. (Dkt. 59-6).

FCOM filed this lawsuit soon after, alleging subject matter jurisdiction based on federal question jurisdiction. The Amended Complaint (Dkt. 24) asserted three claims against Costa and The Champions Fund. Count I, which sought a declaratory judgment and was the basis of federal question jurisdiction, alleged that FCOM was the exclusive owner of the copyright of the photographs of Costa that appeared on FCOM's websites and that FCOM was free to use the photographs "as it deems fit." Count I was dismissed for lack of an actual case or controversy. (Dkt. 75). After the dismissal of Count I, the parties were ordered to show cause why the case should not be dismissed for lack of subject matter jurisdiction. (*Id.*) In response, the parties sought to dismiss Costa as a party and assert subject matter jurisdiction based on diversity of citizenship. (Dkts. 79, 80). Their requests were granted, and this case now proceeds on diversity jurisdiction. (Dkts. 81, 82).

The parties filed a joint notice of the remaining claims and counterclaims after the dismissal

---

[10]Costa did not sign nor is she a party to the contract.

of Costa. (Dkt. 83). Plaintiff has two remaining claims. Count II alleges that TCF breached the Foundation Contract as a result of Costa "1) failing to maintain her current level of fitness; 2) failing to complete her required promotional appearances; 3) failing to complete her required number of social media posts; and 4) failing to complete her required number of conference calls." (Dkt. 24 ¶ 36). Count III is a claim for fraudulent misrepresentation. In Count III, FCOM alleges that TCF lacked authority to license Costa's likeness rights pursuant to Fla. Stat. § 540.08, and TCF "could not license to FCOM what it did not in fact own." (*Id.* ¶ 40).

Defendants filed a Counterclaim (Dkt. 11) which originally had three claims, one of which survives the dismissal of Costa. Count III, the surviving claim, alleges FCOM breached the Foundation Contract by failing to pay TCF the fees due for the renewal term of the Foundation Contract. (Dkt. 11 ¶¶ 43-44, at 19).

FCOM moves for summary judgment on its claim of fraudulent misrepresentation (Count III of the Amended Complaint), and on Defendant's Counterclaim. Defendant moves for summary judgment on all counts of the Amended Complaint and the Counterclaim.

## II.  STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials on

file, that there are no genuine disputes of material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party fails to demonstrate the absence of a genuine dispute, the motion should be denied. *Kernel Records*, 694 F.3d at 1300 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606-08 (11th Cir. 1991)). Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial. *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010). The nonmoving party must "go beyond the pleadings," and designate specific facts showing that there is a genuine dispute. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). A mere scintilla of evidence in the form of conclusory allegations, legal conclusions, or evidence that is merely colorable or not significantly probative of a disputed fact cannot satisfy a party's burden. *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991); *Kernel Records*, 694 F.3d at 1301.

The evidence presented must be viewed in the light most favorable to the nonmoving party. *Ross v. Jefferson Cnty. Dep't of Health*, 701 F.3d 655, 658 (11th Cir. 2012). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003). "Although all justifiable inferences are to be drawn in favor of the nonmoving party," *Baldwin Cnty. v. Purcell*, 971 F.2d 1558, 1563-64 (11th Cir. 1992), "inferences based upon speculation are not reasonable." *Marshall v. City of Cape Coral*, 797 F.2d 1555, 1559 (11th Cir. 1986). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine dispute over a material fact, the court should not grant summary judgment. *Samples ex rel. Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1998). However, if the nonmovant's

response consists of nothing more than a repetition of conclusory allegations, summary judgment is not only proper, but required. *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981), *cert. denied*, 456 U.S. 1010 (1982).

### III.   COUNT II - BREACH OF CONTRACT

TCF moves for summary judgment on Count II of the Amended Complaint. In Count II, FCOM alleges that TCF breached the Foundation Contract[11] in five ways based on Costa's actions or inactions: (1) failing to maintain Costa's level of "fitness"; (2) failing to complete required promotional appearances; (3) failing to complete the required number of social media posts; (4) failing to complete the required number of conference calls; and (5) entering into an agreement with a competitor of FCOM, Anytime Fitness, LLC, in violation of non-compete clauses. (*See* Dkt. 24 ¶¶ 24, 36). Because genuine disputes of material fact exist for each clause, summary judgment will be denied on Count II.

#### A.   *General Principles of Contract Interpretation*

The interpretation of a written contract, including the question of whether a contract is ambiguous, is a matter of law. *DEC Elec., Inc. v. Raphael Constr. Corp.*, 558 So. 2d 427, 428 (Fla. 1990). Where the contract is unambiguous, it must be interpreted in accordance with its plain meaning so as to give effect to the contract as a whole. *Wash. Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013). If possible, conflicting provisions of a contract are to be read in such a way to give a reasonable interpretation and effect to all provisions. *Cont'l Ins. Co. v. Collinsworth*, 898 So. 2d 1085, 1087 (Fla. 5th DCA 2005).

If a contract is "susceptible to more than one reasonable interpretation" and cannot be

---

[11] The breach of contract claims were originally based on both the Foundation and Costa Contracts. Claims based on the Costa Contracts are now moot because the only remaining Defendant, TCF, is not a party to the Costa Contract. All five of the breaches alleged by FCOM relate to provisions in the Foundation Contract.

reasonably reconciled, the contract is deemed ambiguous and rules of contract interpretation must be applied. *State Farm Mut. Auto Ins. Co. v. Menendez*, 70 So. 3d 566, 570 (Fla. 2011); *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 735 (Fla. 2002); *Discover Prop. & Cas. Ins. Co. v. Beach Cars of W. Palm, Inc.*, 929 So. 2d 729, 732 (Fla. 4th DCA 2006). But courts cannot rewrite contracts or add meaning to create ambiguity. *Dahl-Eimers v. Mut. of Omaha Life Ins. Co.*, 986 F.2d 1379, 1382 (11th Cir. 1993) (citing *State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986)). "There must be 'a genuine inconsistency, uncertainty, or ambiguity in meaning [that] remains after resort to the ordinary rules of construction'" for a provision to be ambiguous. *Dahl-Eimers*, 986 F.2d at 1382 (quoting *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 942 (Fla. 1979)). Where the terms of a contract are ambiguous, the actual intention of the parties–the governing principle of contract construction–becomes a question of fact. *In re Gardinier, Inc.*, 831 F.2d 974, 976 (11th Cir. 1987); *Menendez*, 70 So. 3d at 570.

### B.     *The Fitness Clause*

The Foundation Contract contains a provision titled "Talent Responsibility," which the parties refer to as the "fitness" clause. In pertinent part, the fitness clause provides, "[G]iven the specific nature of [FCOM's] business and the services to be provided by [Costa], [Costa] agrees to *maintain her current level of fitness and conditioning* during the term of this Agreement." (Dkt. 59-4 at 3). The parties disagree about the meaning of this clause. The dispute boils down to whether "fitness and conditioning" can be construed to encompass Costa's weight. TCF argues that "fitness and conditioning" should be interpreted according to their dictionary meaning, while FCOM contends that given the nature of FCOM's business, the parties intended for the "fitness and conditioning" clause to include weight.

Ordinary rules of construction require the natural or plain meaning of the contract language

to be assessed. *Dahl-Eimers*, 986 F.2d at 1382. The terms "fitness" and "conditioning" are not defined in the contract. Fitness is defined by Merriam-Webster as "the quality or state of being fit," and "fit" is in turn defined as "physically healthy and strong" or "sound physically and mentally."[12] The definition of "conditioning" partially incorporates the definition of "fit": "[T]he process of training to become physically fit by a regimen of exercise, diet, and rest," and "the resulting state of physical fitness."[13] Notably, neither of these definitions includes any reference to weight. Considering that Costa's fame arose from losing a substantial amount of *weight* on *The Biggest Loser*, however, it would be reasonable to read "fitness and conditioning" as encompassing Costa's weight. And it would likewise be reasonable to read the phrase strictly, in accordance with the dictionary definitions. Because the contract is susceptible to more than one reasonable interpretation, it is ambiguous, and the parties' intention in forming the contract is a question of fact.[14] *Menendez*, 70 So. 3d at 570.

A review of the extrinsic evidence provided by the parties in support of their respective positions reveals that there is a genuine issue of material fact as to whether the parties intended that the Foundation Contract required Costa to maintain her weight. *See Forest Hills Utilities, Inc. v. Pasco Cnty.*, 536 So. 2d 1117, 1119 (Fla. 2d DCA 1988) ("A latent ambiguity is said to exist where a contract fails to specify the rights or duties of the parties in certain situations and extrinsic evidence is necessary for interpretation or a choice between two possible meanings."). Summary judgment is therefore not appropriate, and the question of breach of this clause is reserved for the jury. *See generally St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004) ("Generally, where the parties

---

[12] http://www.merriam-webster.com/dictionary/fit (last visited Nov. 12, 2014).

[13] http://www.merriam-webster.com/dictionary/conditioning (last visited Nov. 12, 2014).

[14] Indeed, the parties' disagreement about the meaning of the phrase "fitness and conditioning" is, itself, evidence of ambiguity of the contract. *Dahl-Eimers v. Mut. of Omaha Life Ins. Co.*, 986 F.2d 1379, 1382 (11th Cir. 1993).

acknowledge creation of a contract and the disagreement concerns their varying understandings about certain terms, such questions are properly submitted to a jury.").

### C. *Social Media Posts*

The social media clause of the Foundation Contract required Costa to

> deliver a minimum of four (4) monthly social media messages through either Facebook or Twitter. The content of the message *can* be worked with [FCOM] and *be mutually agreed upon* promotional messaging. [Costa] and [FCOM] will also coordinate two (2) additional posts per month on [FCOM's] Facebook page directly by [Costa].

(Dkt. 24-2 at 3 (emphasis added)). There is no dispute that Costa did not fulfill this provision. TCF argues it is entitled to summary judgment, despite Costa's failure to post messages, because the clause *required* collaboration and approval by FCOM before Costa posted. The unambiguous language of the clause, however, does not require FCOM to approve every message before Costa sent it out. Rather, the provision provides that the messages "*can*" be "worked with [FCOM]" and "be mutually agreed upon," not that they *must* be. This language is unambiguously permissive, rather than mandatory. *See United States v. Novas*, 461 Fed. Appx. 896, 901 (11th Cir. 2012) (the word "can" is permissive rather than mandatory). Accordingly, TCF is not entitled to summary judgment with respect to FCOM's claim of breach as to social media posts.

### D. *Conference Calls*

The "Conference Calls" provision of the Foundation Contract required Costa to participate in two conference calls per month with "clients" and one conference call per month with "store owners." (Dkt. 59-4 at 3). The dates of the calls were to be "mutually agreed to no less than fifteen (15) business days in advance of the calls." (*Id.*) And it is undisputed that FCOM was responsible for providing the "conference call numbers, system and moderator" that would enable Costa to participate in the conference calls. (*Id.*) FCOM alleges that TCF breached the contract because Costa

failed to participate in any conference calls. TCF argues that it is entitled to summary judgment because FCOM never set up any conference calls or asked Costa to participate in any. FCOM disagrees, arguing that it attempted to contact Costa several times to no avail.

Genuine disputes of material fact preclude summary judgment on the conference calls clause. While Michael Parella, the CEO of FCOM, admitted he never directly asked Costa to participate in conference calls, (Dkt. 62 Ex. T, Parella Dep. 87:14-20), he contended at his deposition and in an affidavit that he "repeatedly attempted to engage with Costa" between May 2011 and October 2011 and was rebuffed each time. (*Id.* at 87-88; Dkt. 62-6 ¶ 11). TCF argues that FCOM did not provide the conference call numbers, system, and moderator required by the contract, but viewing the facts in the most favorable light to FCOM, a reasonable jury could find that was because Costa refused to work with FCOM to schedule "mutually agreed" dates for the calls. When parties to a contract dispute their "understanding as to certain terms," the question is "properly submitted to the jury." *Pan Am. Bancshares v. Trask*, 278 So. 2d 313, 314 (Fla. 4th DCA 1973). Summary judgment will accordingly be denied on the conference calls provision of the Foundation Contract.

### E. *Promotional Appearances*

The "Public Relations" clause of the Foundation Contract required Costa to make six "in person PR appearances" during each year of the agreement. (Dkt. 59-4 at 3). Like the conference calls, the parties agree that Costa did not make any appearances, but disagree as to why.

Again, there are disputes of material fact that make summary judgment inappropriate. TCF contends, in essence, that FCOM was required to arrange the appearances, and failed to do so. The contract only states, however, that "[Costa] will make six (6) in-person PR appearances at no additional charge . . . ." (*Id.*) Separate from the costs of transportation and accommodation, the contract is silent as to which party was responsible for arranging the promotional appearances. (*See*

*id.) See Travelers Indem. Co. v. PCR Inc.*, 889 So. 2d 779, 785 (Fla. 2004) (A contract is "ambiguous" when "the language is susceptible to more than one reasonable interpretation.") (quotation and citation omitted). Even if the contract was not ambiguous, FCOM's arguments about Costa's unavailability or unwillingness to agree to dates, as with the conference calls, renders this a question for the trier of fact.

### F. Non-Compete

The "Non Compete" provisions of the Foundation Contract provide that Costa "will not enter into any formal business relationship with any martial arts training or kickboxing facilities, including but not limited to any type of endorsement, speaking appearance or media presence." (Dkt. 24-6 at 3; Dkt. 59-4 at 3).[15] FCOM alleges that Costa breached this provision by entering into an agreement with Anytime Fitness, LLC, one of FCOM's competitors. (Dkt. 24 ¶ 24). Defendants contend that they are entitled to summary judgment because Anytime Fitness does not "promote kickboxing or martial arts classes at a corporate level." (Dkt. 59 at 15).

None of the evidence offered by TCF demonstrates whether or not Anytime Fitness is a "martial arts training or kickboxing facilit[y]," however. TCF cites to the deposition of Rob Katz, who testified that he told FCOM that Anytime Fitness did not promote kickboxing. (Dkt. 59-11). This hearsay testimony fails to satisfy TCF's burden on summary judgment. Further, FCOM's CEO submitted an affidavit stating that Anytime Fitness offered kickboxing classes (Dkt. 62-6 ¶ 12). Accordingly, whether TCF breached the non-compete clause will be determined by the jury.

### IV. COUNT III: FRAUDULENT MISREPRESENTATION

The parties have both filed motions for summary judgment on Count III of the Amended

---

[15] Defendants do not argue that this non-compete provision is unenforceable or unreasonable. *See* § 542.335, Fla. Stat.; *Envt'l Servs., Inc. v. Carter*, 9 So. 3d 1258, 1261-62 (Fla. 5th DCA 2009).

Complaint. Count III asserts a claim for fraudulent misrepresentation, in which FCOM alleges that "[a]n underlying premise of the Foundation Contract is that [TCF] owns, or had the legal right to license" Costa's likeness rights pursuant to Fla. Stat. § 540.08(1)(b).(Dkt. 24. ¶ 40).[16] Although FCOM references "statements regarding Costa's 'Likeness Rights' in the Foundation Contract" which it asserts were "false," Defendants understandably ponder what "statements" FCOM alleges were false, and contend in any event that Plaintiff cannot show damages (Dkt. 58, p. 9 - 11) ("It is not clear what statement (by which Defendant) that Plaintiff claims is false. Plaintiff seems to imply that TCF falsely asserted that the License Agreement was signed, and hence it did not obtain rights from Costa."). As Plaintiff has not demonstrated that Defendant made a material false statement or that it suffered consequential damage as a result of its reliance on the claimed false statement, summary judgment on Count III in favor of Defendant is appropriate.

Fraudulent misrepresentation is a recognized cause of action in Florida. The elements of fraudulent misrepresentation are "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010).

FCOM essentially contends that by entering into the Foundation Contract, TCF falsely, albeit implicitly, misrepresented its authority to license Costa's likeness, because Costa never authorized the use of her likeness in writing, as required by § 540.08(1). Under § 540.08, no person may use the likeness of any person without the express written or oral consent to such use by the person or any other entity "authorized in writing by such person to license the commercial use of her or his name

---

[16] Costa was not a party to the Foundation Contract. TCF entered the contract "on behalf of Tara Costa." (Dkt. 59-4).

or likeness." Fla. Stat. § 540.08(1)(a)-(b).

FCOM's argument in support of its summary judgment motion is problematic in three ways. First, as Defendants point out, it is unclear what statement (and by whom) Plaintiff contends was false. FCOM does not identify what statement was false, other than an implicit statement of authority to license Costa's likeness. And the Foundation Contract does not contain any representation that Costa authorized TCF to use her likeness. (*See* Dkt. 59-4). On that basis alone, summary judgment for FCOM is inappropriate, because Plaintiff has not demonstrated evidence satisfying the first element of a cause of action for fraudulent misrepresentation, as pleaded in Count III.

In Florida, a cause of action for fraudulent misrepresentation requires a plaintiff to prove that the defendant made a false statement.[17] "An essential element in any claim of fraudulent misrepresentation is competent, substantial evidence that a false statement concerning a material fact was made. Fraud is not presumed but must be proved." *Nagel v. Cronebaugh*, 782 So. 2d 436, 439 (Fla. 5th DCA 2001). Although Defendant does not fully develop its argument, it is correct that it cannot be determined what statement Plaintiff contends was false and by whom that statement was made. "In order to state a claim for fraudulent misrepresentation, the Plaintiff must identify the false statement or statements of material fact which form the basis of the Plaintiff's fraudulent misrepresentation claim. It must not be left to [] the defendant, or the Court to guess which statements . . . are the allegedly false ones." *In re Palm Beach Fin. Partners, L.P.*, 517 B.R. 310, 337 (Bankr. S.D. Fla. 2013) (applying Florida law). Plaintiff's reliance on the definition of "statement" in Rule 801(a), Fed. R. Evid. is misplaced, as Florida law defines the elements of the cause of action pleaded in Count III.

---

[17]In certain situations, particularly regarding the sale of real property, failure to disclose material facts can give rise to liability for fraudulent misrepresentation. *Johnson v. Davis*, 480 So. 2d 625 (Fla. 1985). However, there remains a distinction between the "traditional action for fraudulent misrepresentation" and "a claim for non-disclosure under *Johnson*." *Billian v. Mobil Corp.*, 710 So. 2d 984, 987 (Fla. 4th DCA 1998).

Second, rather than an express false statement, Plaintiff seemingly relies on an implicit representation that Defendant had Costa's written authority to license her likeness under § 540.08. FCOM contends that because the original signed license agreement between Costa and The Champions Fund either never existed or was lost, TCF never had the written authority to license Costa's likeness and therefore it was the victim of a fraudulent misrepresentation.[18] FCOM has not marshaled any case law supporting the proposition that a fraudulent misrepresentation can be based on an implicit statement. Indeed, the weight of authority requires the plaintiff to identify "specific facts and state[] how they were false." *Simon v. Celebration Co.*, 883 So. 2d 826, 832-33 (Fla. 5th DCA 2004); *Nagel v. Cronebaugh*, 782 So. 2d 436, 439 (Fla. 5th DCA 2001) ("competent, substantial evidence of false statement" required); *Stow v. National Merchandise Co.*, 610 So. 2d 1378, 1383-84 (Fla. 1st DCA 1992) (affirming directed verdict on fraudulent misrepresentation claim when no express false statement was made).

Finally, it is undisputed that neither Costa nor TCF ever objected to FCOM's use of Costa's likeness during the two-year contract term or challenged the validity of the Foundation Contract. Indeed, Costa and TCF agree that TCF had the authority to license Costa's likeness. (Dkt. 59-2 ¶ 2; Dkt. 59-7 at 147:19-21). Even accepting as true for purposes of summary judgment FCOM's (unsupported) claim that the license agreement never existed, FCOM cannot show it was injured.

---

[18]FCOM does not present any authority in support of this argument, except for a reference to the best evidence rule. However, it is well settled that the best evidence rule does not apply when the parties are merely demonstrating the existence of a contract, as distinct from its terms or provisions. *Cox v. State*, 99 So. 126, 126 (Fla. 1924). And if the parties to a contract agree that it existed, as TCF and Costa do, parol evidence is admissible to prove the terms of the contract, where the proponent provides a satisfactory explanation that the original contract was lost or destroyed. *Ins. Co. of State of Pa. v. Genova Exp. Lines, Inc.*, 605 So. 2d 941, 942-43 (Fla. 3d DCA 1992). *See also* § 90.954, Fla. Stat. ("The original of a writing . . . is not required, except as provided in s. 90.953, and other evidence of its contents is admissible when . . . [a]ll originals are lost or destroyed . . . .").

Costa and TCF have provided a satisfactory explanation that the original license agreement was lost. They have submitted a blank copy of the contract, have testified that the terms of the original license agreement provided TCF with the right to license Costa's likeness, and even entered into a contract confirming that the original license agreement existed.

The alleged misrepresentation relates to TCF's authority to license Costa's photos. However, neither TCF nor Costa challenged FCOM's use of Costa's likeness or the validity of the Foundation Contract based on § 540.08.[19] *See Kent v. Sullivan*, 793 So. 2d 1027, 1028 (Fla. 5th DCA 2001) (without "resulting damage," false representation "did not constitute a fraud upon which a claim for relief could be based."). Because FCOM is unable to demonstrate evidence of any injury based on the alleged fraudulent misrrepresentation, summary judgment is due to be granted to TCF on Count III.[20] *See Butler*, 44 So. 3d at 105 (elements of fraudulent misrepresentation include consequent injury by the party acting in reliance on the false representation); *Simon*, 883 So. 2d at 833 ("fraud cannot form the basis for recovery of damages unless the damages directly arise from the fraud and are causally connected to the fraud"); *Echeverria v. BAC Home Loans Servicing, LP*, 900 F. Supp. 2d 1299, 1309 (M.D. Fla. 2012) *aff'd*, 523 F. Appx 675 (11th Cir. 2013) ("Plaintiffs have not presented evidence that they suffered injury in reliance on Defendants' alleged misrepresentations. Their claim for fraudulent misrepresentation therefore fails as a matter of law.").

## V. TCF'S COUNTERCLAIM

Although the Counterclaim contains three counts, only Count III remains after the dismissal of Costa. Both sides move for summary judgment on Count III, in which TCF claims FCOM

---

[19]Plaintiff correctly concedes that any damages for fraudulent misrepresentation must be "completely separate from any breach of contract damages." Dkt. 57 at 11. "[I]t is firmly established that damages for fraud may not be recovered when they merely duplicate those sustained as a result of a concomitant breach of contract." *Nat'l Aircraft Servs., Inc. v. Aeroserv Int'l, Inc.*, 544 So. 2d 1063, 1065 (Fla. 3d DCA 1989).

[20]FCOM's alternative motion in limine fails for similar reasons. FCOM argues that *Klein v. Frank*, 534 F.2d 1104 (5th Cir. 1976) supports its position that the confirmation agreement ratifying and confirming the terms of the lost license agreement should be excluded under FRE 1004. *Klein*, citing to FRE 1004, actually states "the generally accepted rule [is] if the party relying upon the writing can prove that a writing existed and has been lost or destroyed, he is relieved of the burden of producing the original and can present secondary evidence of its contents." *Id.* at 1107-08. Therefore, FRE 1104 does not support FCOM's argument that evidence of the lost license agreement should be excluded.

FCOM's argument that the confirmation agreement is inadmissible hearsay need not be considered because the non-hearsay evidence demonstrates FCOM suffered no injury, and is sufficient to support summary judgment in favor of TCF on the fraudulent misrepresentation claim.

17

breached the Foundation Contract by refusing to pay the licensing fee for the second year. There is no dispute that FCOM did not pay the licensing fee for the second year of the contract. (Dkt. 62-6 ¶¶ 14-18). Plaintiff invokes several theories (including anticipatory breach, voluntary abandonment, and waiver) excusing it from having to pay the licensing fee, all of which are based on the argument that Costa and TCF materially breached or otherwise repudiated the contract, absolving Plaintiff of the duty to pay the licensing fee.[21] "It is axiomatic that where a promise to pay a sum of money is made upon the consideration of a promise to perform a certain service, the consideration fails, and the promise to pay is discharged, if the services are not performed." *Rose Printing Co. v. Haggerty*, 584 So. 2d 606, 608 (Fla. 1st DCA 1991) (quoting *Binz v. Helvetia Fla. Enter.*, 156 So.2d 703, 704 (Fla. 3d DCA 1963)).

The parties' summary judgment motions on Counterclaim Count III will be denied. As discussed in Section III, there are genuine issues of material fact as to whether TCF and Costa breached the Foundation Contract. The jury will determine whether TCF breached the relevant provisions of the Foundation Contract, and if so, whether those breaches were material.[22]

## VI. CONCLUSION

Plaintiff's Motion for Partial Summary Judgment and in the Alternative, Motion in Limine (Dkt. 57) is **DENIED**. Defendants' Motion for Final Summary Judgment (Dkt. 59) is **GRANTED as to Count III** but otherwise **DENIED**. Plaintiff's Motion for Summary Judgment on Defendants'

---

[21] Plaintiff also claims Defendants lacked standing to allege a breach of contract because TCF did not have the authority to license Costa's likeness rights. This argument fails for the same reason TCF was granted summary judgment on Count III of the Amended Complaint: TCF plainly had the authority to do so.

[22] Whether a breach is material turns on whether the party's alleged nonperformance "go[es] to the essence of the contract." *MDS (Canada) Inc. v. Rad Source Technologies, Inc.*, 720 F.3d 833, 849 (11th Cir. 2013) (quoting *Beefy Trail, Inc. v. Beefy King Int'l, Inc.*, 267 So.2d 853, 857 (Fla. 4th DCA 1972)). "The issue of whether an alleged breach is vital or material is . . . a question of fact." *Covelli Family, L.P. v. ABG5, L.L.C.*, 977 So. 2d 749, 752 (Fla. 4th DCA 2008) (citing *Moore v. Chodorow*, 925 So.2d 457, 461 (Fla. 4th DCA 2006)) (further citation omitted).

Counterclaims (Dkt. 61) is **DENIED.**

**DONE AND ORDERED** this __18th__ day of November, 2014.

                                    JAMES D. WHITTEMORE
                                    United States District Judge

Copies to: Counsel of record